# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LEE YANG,**

     Petitioner,

   -vs-           **Case No. 14-C-892**

**WILLIAM POLLARD, Warden,**
**Waupun Correctional Institution,**

     Respondent.

## DECISION AND ORDER

  Lee Yang, convicted in state court of first degree intentional homicide with the use of a deadly weapon, petitions this Court for relief under 28 U.S.C. § 2254. The sole claim in Yang's petition is that the trial court erred when it refused to suppress his custodial confession. The following facts, lifted from the court of appeals' decision affirming Yang's conviction, are "presumed to be correct" for purposes of these proceedings. § 2254(e)(1).

  On Christmas Eve, 2009, Yang was arrested for the shooting death of his ex-wife's boyfriend. After being advised of his *Miranda* rights, Yang agreed to speak with police. During that interview, one of the officers translated from English to Hmong, and from Hmong to English. Yang

answered questions but denied any involvement with the homicide. Yang did not request an attorney.

Also on December 31, City of Milwaukee police detectives Christopher Blaszak and Rodolfo Gomez executed a search warrant of Yang's residence. In addition to discovering numerous firearms and rifles, Blaszak and Gomez observed military documents and commendations recognizing Yang's service in the Vietnam War. Detective Gomez noticed a "certificate signed by numerous congressmen thanking Mr. Yang for his exemplary service."

On January 2, 2010, beginning around 10:30 a.m., Detective Gust Petropoulos interviewed Yang. Officer Hue Kong translated during the interview. Petropoulos advised Yang of his *Miranda* rights. Yang agreed to answer questions. The interview proceeded for "a couple hours" until Yang requested a lawyer. Upon Yang's invocation of his right to counsel, Petropoulos stopped the interview.

Later that same day, Detective Gomez attended a homicide division briefing at the beginning of his 4:00 p.m. to 10:00 a.m. shift. At that briefing, Gomez learned that Yang had invoked his right to counsel in his interview with Petropoulos. At approximately 5:15 p.m., Gomez visited Yang in his cell at the city jail. Being a veteran himself, Gomez wanted to

meet Yang because he considered Vietnam War veterans to be heroes. Gomez introduced himself and explained that it was an honor to speak with Yang. Gomez observed that Yang had difficulty understanding English. Gomez showed Yang a challenge point that he carries in his wallet. Gomez testified that a challenge point is "a coin awarded by commanders of various military units for exemplary service or performance to subordinates." After Gomez pointed to the soldier depicted on the coin, Yang stood and shook Gomez's hand.

Yang attempted to talk about his ex-wife, but Gomez immediately raised his hand, motioning to Yang to stop speaking. Gomez told Yang that he did not want to talk about her. Gomez and Yang then discussed Yang's son, who was a Marine. Gomez shook Yang's hand, gave Yang his business card, and explained through hand signals to call him if he needed anything, such as food or water. Gomez told Officer Lewis Brown, the jailer on duty, that if Yang needed anything or wanted something from McDonald's, Gomez would pay for it.

Later that evening, while Brown was performing his rounds, Yang handed Gomez's business card to Brown through the cell door's food tray hole. Brown assumed that Yang wanted to talk to Gomez, so Brown telephoned the criminal investigation bureau.

Shortly after 10:00 p.m., Gomez learned of and returned Brown's call. Brown informed Gomez that Yang wanted to speak with him. Gomez and the translator-on-duty, Officer Sonthana Rajaphoumi, went to Yang's cell around 10:30 p.m.. Speaking through the cell door's view port, Yang confirmed to Gomez that he had asked to speak with him. Yang stated that he wanted to speak about the allegations. Gomez then escorted Yang to an interview room in the same building. There, Yang confirmed again that he wanted to speak with Gomez. Detective Matthew Goldberg assisted in the interview, with Rajaphoumi translating.

The recording of the interview shows that Gomez explained to Yang that Yang had previously invoked his right to a lawyer and wanted to make sure that Yang was voluntarily talking with Gomez. Yang stated that he still wanted to talk. Gomez advised Yang of his *Miranda* rights. After the advisement, Yang asked whether a lawyer would be present. Gomez explained that, as previously mentioned in the advisement, Yang could stop talking, or if he wished, he could continue speaking with Gomez. Yang stated that he was willing to speak with Gomez. During the course of the interview, which lasted about two hours, Yang confessed to the shooting.

This Court can grant habeas relief only if the state court's decision

"was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." §§ 2254(d)(1), (2). "Plainly stated, these are demanding standards." *Atkins v. Zenk*, 667 F.3d 939, 943-44 (7th Cir. 2012).

As the court of appeals noted, it is "undisputed that Yang effectively invoked his *Miranda* right to counsel at the conclusion of the morning interrogation with Petropoulos on January 2, 2010. Therefore, the issues on appeal are whether Gomez's 5:00 p.m. visit to Yang constituted an interrogation after Yang's invocation of his right to counsel, and, if it did not, whether Yang initiated the 10:30 p.m. interrogation by handing Gomez's business card to Brown." *State v. Yang*, 828 N.W.2d 593, 2013 WI App 41 at ¶ 19.

On the first issue, the court of appeals applied *Rhode Island v. Innis*, 446 U.S. 291 (1980), which holds that the "functional equivalent" of interrogation for purposes of *Miranda* is "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating

response from the suspect." *Id.* at 301. The court reasoned that "Gomez's words and conduct constituted nothing more than small talk regarding military service and whether Yang needed anything, such as food or water. Gomez's initial visit lasted no more than five minutes. Gomez did not perform any express questioning, nor did he even mention the investigation or the facts leading to Yang's arrest. When Yang mentioned his ex-wife, Gomez immediately indicated to Yang to stop talking." 2013 WI App at 25. The court also rejected Yang's argument that Gomez "used his specific knowledge as to Yang's veteran status to appeal to Yang's vulnerability…" *Id.* at 26. Gomez's entreaty to Yang was to contact him for food, water, or other comforts, not to contact him if he had anything to say, which could have been construed as an open-ended invitation to give a statement about the murder. Moreover, the language barrier and the fact that Gomez and Yang communicated by hand signals supports the finding that no interrogation occurred. *Id.* at 27.

The Court concurs in this analysis. From Yang's perspective, nothing in the record suggests that he was particularly vulnerable when discussing his own military service. *Innis* at 302 (defendant was "not peculiarly susceptible to an appeal to his conscience concerning the safety of handicapped children"). From the opposite perspective, Gomez may have

- 6 -

thought that being friendly with Yang *might* result in a confession, but officers "do not interrogate a suspect simply by hoping that he will incriminate himself." *Arizona v. Mauro*, 481 U.S. 520, 529 (1987). Ultimately, an objective observer would not believe that Gomez's 5:00 p.m. visit with Yang was "reasonably likely to elicit an incriminating response from the suspect and therefore constituted the functional equivalent of interrogation." *Enoch v. Gramley*, 70 F.3d 1490, 1500 (7th Cir. 1995). Therefore, the court of appeals did not unreasonably apply *Innis*.

On the waiver issue, the court of appeals cited the competing tests set forth in *Oregon v. Bradshaw*, 462 U.S. 1039 (1983) regarding whether the suspect "initiated further communication, exchanges, or conversations with the police, "[1] *id.* at 1044 — when the suspect asks questions or makes statements that "under the totality of circumstances 'evinced a willingness and a desire for a generalized discussion about the investigation,'" *id.* at 1045-46, or when the suspect initiates further "communication or dialogue *about the subject matter of the criminal investigation.*" *Id.* at 1053 (Marshall, J., dissenting) (emphasis in original). The court then held that Yang initiated further communication under either test. "Yang's

---

[1] This is a "prophylactic rule, designed to protect an accused in police custody from being badgered by police officers…" *Bradshaw*, 462 U.S. at 1044. Yang did not pursue an argument on the additional requirement that the waiver be voluntary, knowing, and intelligent. *Id.* at 1046; 2013 WI App at ¶ 29.

confirmation that he wanted to speak with Gomez, along with his immediate statement about wanting to discuss the allegations, demonstrated an obvious interest and willingness to discuss the investigation and constituted dialogue about the subject matter of the criminal investigation." 2013 WI App at ¶ 32. Once again, the Court agrees with this analysis. Yang clearly initiated the discussion with Gomez about his wife's murder. Therefore, the court of appeals did not unreasonably apply *Bradshaw*.

Accordingly, Yang's petition will be denied, but the Court must make a detour to address a series of pending collateral motions. First, the Court will address two motions that are related to Yang's attempt to pursue claims for ineffective assistance of counsel: a motion for post-conviction relief, which the Court construes as a motion to amend his petition, and a motion to stay while Yang attempts to exhaust claims in state court.

Federal courts have discretion to stay habeas proceedings when there is good cause for the failure to exhaust, the unexhausted claim is potentially meritorious, and petitioner has not engaged in "intentionally dilatory litigation tactics." *Rhines v. Weber*, 125 S. Ct. 1528, 1535 (2005). In order to succeed on a claim for ineffective assistance of counsel, Yang

would have to demonstrate that his attorneys made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, and also that "the deficient performance prejudiced the defense." *Campbell v. Smith*, 770 F.3d 540, 547 (7th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)). Yang's claim would necessarily fail on the second prong because his confession was validly admitted into evidence at his trial. The admission of that evidence means that there is no "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' The likelihood of a different outcome 'must be substantial, not just conceivable.'" *Id.* (quoting *Strickland* and *Harrington v. Richter*, 562 U.S. 86 (2011)). Moreover, given the importance of that evidence, Yang's counsel was not deficient. Instead, Yang's attorneys correctly focused their energies on trying to keep Yang's confession from the jury. Accordingly, the Court will deny Yang's request for a stay because his claims lack merit. For similar reasons, Yang's motion for post-conviction relief (i.e., his motion to amend his petition) is denied because of the futility of the amendment. *Villa v. City of Chi.*, 924 F.2d 629, 632 (7th Cir. 1991).

Also before the Court are Yang's motions for an interpreter and for appointment of counsel. There is no constitutional right to representation or free interpreter services in federal civil cases. *See, e.g., Ali v. Gerry*, Civil No. 12-cv-185-JL, 2012 WL 4848889, at *1-2 (D.N.H. Oct. 10, 2012). Yang was able to present arguments that necessarily mirror those made by his counsel in state court. Since Yang is clearly not entitled to habeas relief, the interests of justice do not require the appointment of counsel or the use of an interpreter. 18 U.S.C. § 3006A (Criminal Justice Act); 28 U.S.C. § 1827 (Court Interpreters Act).

Finally, in connection with this Order, the Court must determine whether to issue or deny a certificate of appealability. Rule 11(a), Rules Governing Section 2254 Cases. Yang failed to make a "substantial showing" that "jurists of reason could disagree" with this Court's "resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Therefore, the Court will not issue a certificate for appeal.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Yang's motion for an interpreter [ECF No. 3] is **DENIED**;

2. Yang's motion for post-conviction relief [ECF No. 6] is **DENIED**;

3. Yang's motion to appoint counsel [ECF No. 8] is **DENIED**;

4. Yang's motion to stay [ECF No. 16] is **DENIED**;

5. Yang's petition is **DENIED**; and

6. The Court will not issue a certificate of appealability. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of December, 2014.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**